UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

JARRETT HAMILTON,                        )
                                          )
                        Plaintiff,        )
                                          )
            v.                            )        No. 4:16-cv-00210-SEB-DML
                                          )
FLOYD COUNTY INDIANA, et al.              )
                                          )
                        Defendants.       )

## ORDER ON PENDING MOTIONS

This cause is before the Court on Defendants' Motion for Summary Judgment [Docket No. 35], filed on February 12, 2018,[1] and Plaintiff's Motion for Preliminary Injunction [Docket No. 39], filed on March 28, 2018. Plaintiff Jarrett Hamilton has brought this lawsuit pursuant to 42 U.S.C. § 1983 against Defendants Floyd County, Indiana; Floyd County Health Department; Julia Hayes; Connor Monroe; Thomas Snider; Tom Harris; and Matthew Swarens, alleging that Defendants violated his rights under the Fourth, Sixth, Seventh, and Eighth Amendments to the United States Constitution in connection with various searches of his property. For the reasons detailed below, we DENY Plaintiff's Motion for Preliminary Injunction and GRANT IN PART and DENY IN PART Defendants' Motion for Summary Judgment.

---

[1] In their reply brief, Defendants moved to strike Plaintiff's response in opposition to summary judgment as untimely. However, Local Rule 7-1(a) instructs that "a motion must not be contained within a brief, response or reply to a previously filed motion, unless ordered by the court." Because Defendants' motion to strike does not comply with the Local Rules and is not properly before the court, we do not consider it.

1

## Factual Background

Mr. Hamilton has owned property located at 519 Hausfeldt Lane, New Albany, Indiana ("the Property"), since approximately 2014. In 2013 and then again in 2015, the City of New Albany undertook a cleanup of the Property. Despite these cleanup efforts, the Floyd County Health Department ("Health Department") continued to receive complaints through February 2016 regarding the condition of the Property, including that there were "massive amounts of garbage lining the property," "several abandoned cars full of items," and "junk" on the Property and that the inside of the garage and residence located on the Property were filled with newspapers, cardboard boxes, and garbage. Harris Aff. ¶ 4; Defs.' Exh. C-1.

In May 2016, Defendants Thomas Snider and Julia Hayes, both Health Department employees, drove by—but did not enter—the Property in an attempt to verify the information in the complaints received by the Health Department. Mr. Snider and Ms. Hayes reported to Defendant Tom Harris that they had observed several vehicles on the Property that appeared to be abandoned, surrounded by items such as mattresses, overturned storage tubs, toys, used food containers, baskets, wood scraps, and plastic sheets, all of which were clearly visible from the public street. Snider Aff. ¶ 5.

Rather than issue an order to Mr. Hamilton to immediately vacate and abate the Property, on September 6, 2016, the Health Department instead filed in Floyd Superior Court No. 1 a Complaint to Enforce Order to Inspect Property against Mr. Hamilton, cause number 22D01-1609-MI-001374. Harris Aff. ¶ 5; Defs.' Exh. E-1. On October 12, 2016, the Floyd Superior Court held a hearing with Mr. Hamilton present at which

Judge Susan Orth granted the Health Department's request to inspect the Property. Defs.' Exh. E-2. According to Mr. Hamilton, beginning with the October 12 hearing, he requested a jury trial each time he was in court. At the October 12 hearing, Judge Orth denied his request, informing him that he was not entitled to a jury trial. Hamilton Dep. at 52–53. Mr. Hamilton also requested time to hire an attorney, but could not find one to represent him. *Id.* at 53–54.

Pursuant to Judge Orth's order, the Health Department was permitted to immediately "inspect, investigate, evaluate, conduct testing, and or take specimens or samples for testing" from the Property. The Floyd Superior Court's order further directed the New Albany Police Department to assist in the enforcement of the order and the entry onto the Property. Finally, the order set a November 16, 2016 date for a review hearing following the inspection.

### *The October 12, 2016 Inspection*

On October 12, 2016, Ms. Hayes and Mr. Snider inspected the Property. They were accompanied by Defendant and Floyd County Sheriff's Department ("FCSD") Deputy Matthew Swarens, a process server for the FCSD, who was to serve Mr. Hamilton with the court order. Other FCSD deputies knocked on the door of the residence, but no one answered. Officer Swarens left the notice on Mr. Hamilton's door and left the Property. The other FCSD deputies remained on the Property while Ms. Hayes and Mr. Snider conducted an inspection.

The purpose of the October 12 inspection was to assess the exterior areas of the Property in order to take note of the objects in plain view and to identify any potential

health or safety concerns. Ms. Hayes and Mr. Snider walked around the Property making

a visual inspection of its condition and Mr. Snider took photographs to document what

they observed. No one from the Health Department or the FCSD entered the residence or

any other structure on the Property, moved anything, opened any containers, or seized

any item from the Property on that date.

During their inspection, Ms. Hayes and Mr. Snider saw what they believed might

be sewage discharge on the ground. Chemical containers, presumably containing

hazardous materials, were also visible on the lawn. Mr. Snider's photographs depict tires

and containers holding water sitting on the Property, as well as garbage and debris,

including empty food and beverage containers, both in vehicles parked on the Property

and on the ground. The refuse covered significant portions of Mr. Hamilton's yard and,

in some cases, was piled approximately three to four feet deep. According to Mr. Snider,

these conditions created the potential for harboring mosquitoes and rats and also for

contaminating soil and groundwater.

Based on the October 12 inspection, Mr. Harris determined that the Property was

"unfit for human habitation and dangerous or detrimental to life or health." Def's Exh.

C-2. On October 20, 2016, in accordance with Indiana Code § 16-41-20 *et seq.*, the

Health Department sent Mr. Hamilton a Notice of Violation and Order to Abate, which

required him to cure the unsafe conditions on the Property on or before November 14,

2016. The Health Department served Mr. Hamilton with this notice via certified and

regular mail, as required by the statute.

***November 16, 2016 Review Hearing***

Pursuant to its October 12, 2016 Order, on November 16, 2016, the Floyd Superior Court held a review hearing. Two days prior to the scheduled hearing, Mr. Hamilton filed a motion to continue, which was denied by the court. Despite his knowledge that the hearing would proceed on November 16 as scheduled, Mr. Hamilton did not appear.

At the November 16 hearing, Judge Orth found that Mr. Hamilton had failed to take any efforts to cure the issues with the Property that had been identified in the Health Department's October 20 notice, and, as a result, ordered Mr. Hamilton to vacate the property within five days. The court declared the Property unfit for human habitation, according to Indiana Code, and authorized the Health Department to enter the Property in order to further inspect the conditions and to take samples for testing. The court also authorized the FCSD to use force if required to gain entry onto the Property and to remove Mr. Hamilton from the premises. Finally, the court found Mr. Hamilton to be in contempt of court for violating its October 12 order and scheduled another review hearing for January 18, 2016.

***November 22, 2016 Inspection***

Pursuant to the Floyd Superior Court's order, an interior inspection of the residence located on the Property occurred on November 22, 2016. Several unnamed FCSD deputies entered the Property first and attempted to gain entry into the residence by knocking several times and announcing their presence. When no one answered the door, the officers waited several minutes before determining that it was necessary to force

open the door to the residence.  Officer Swarens then entered the residence to leave a copy of the November court order and then left the premises without conducting any type of inspection.

Health Department officials, including Ms. Hayes, Mr. Snider, and Defendant Connor Monroe, then entered the residence and conducted an inspection of the interior. The purpose of the inspection was to assess the conditions inside the residence and determine whether they posed any health and safety risks.  Because Health Department officials had observed signs of sewage discharge during the previous inspection of the exterior of the Property, they also intended to conduct a "dye test" which involves putting colored dye into the bathroom plumbing and then observing whether the dye is visible on the ground outside.  However, upon entering the residence, Health Department officials discovered that the bathroom sink was clogged, so the dye test could not be performed.

Once they determined that they would be unable to perform the dye test, Ms. Hayes, Mr. Snider, and Mr. Monroe walked room to room inside the residence, observing and photographing the conditions inside the home.  They did not search through any boxes or other containers, nor did they move or damage any items in the residence. According to Mr. Snider, it was apparent that the conditions inside the home posed serious health hazards and so he and Ms. Hayes and Mr. Monroe stayed inside the residence only long enough to document the conditions in each room, which took no more than thirty minutes total.  No one removed anything from the Property.

The photographs of the home's interior show piles of trash, debris, and miscellaneous items, including books, blankets, photographs, and clothes, piled from the

floor to the ceiling throughout the residence. Items were stacked up to the ceiling in the shower as well. The only way to move through the house was via one narrow pathway that had been cleared through the debris. According to Health Department officials, these conditions posed a fire hazard. Also, because the residence was so full of debris, the air ducts were blocked, meaning that there was no ventilation in the house, creating conditions that would likely encourage growth of mold and mildew as well as attract rodents. Based upon the clogged bathroom sink signs of sewage outside the home, the Health Department also remained concerned about the functioning of the plumbing.

### January 18, 2017 Review Hearing

Pursuant to its November 16, 2016 Order, the Floyd Superior Court held a review hearing on January 18, 2017. Although Mr. Hamilton had been served with the court's November 16 Order, he did not appear at the January 18 hearing. At the hearing, the court again ordered Mr. Hamilton to vacate and abate the unsafe conditions on the Property. The court scheduled another review hearing for February 8, 2017, and ordered the Health Department to conduct another inspection of the Property before that date.

### February 6, 2017 Inspection

In accordance with the court's January 18 Order, Mr. Monroe and Mr. Snider conducted a follow-up inspection of the Property on February 6, 2017 in order to determine whether any of the hazardous conditions previously identified by the Health Department had been remedied. As with the prior inspections, unnamed FCSD deputies accompanied Mr. Monroe and Mr. Snider to the Property, knocked at the door and announced their presence, but no one opened the door. The deputies then forced entry

into the house and immediately entered for the purpose of "clearing" the residence and determining whether anyone was inside. They found Mr. Hamilton inside the home, but he left the Property as the inspection began.

As with the previous inspections, Mr. Monroe and Mr. Snider observed the condition of the exterior of the Property as well as the interior of the residence located on the Property, but did not search through boxes or containers, move or damage any items, or remove anything from the Property. Based on their observations, Mr. Monroe and Mr. Snider concluded that Mr. Hamilton had not made any efforts either inside the residence or on the exterior of the Property to address any of the hazardous conditions identified by the Health Department.

### February 8, 2017 Review Hearing

On February 8, 2017, the Floyd Superior Court held a review hearing, which Mr. Hamilton attended. At the hearing, the court determined that the Property continued to be unfit for human habitation, a public nuisance, and a danger to the health of the community. The court ordered Mr. Hamilton to vacate the Property pending approval of a plan to abate the unsafe conditions identified by the Health Department. The court authorized the FCSD to assist in the enforcement of the order and to remove Mr. Hamilton from the Property if he returned.

### The Instant Litigation

Mr. Hamilton filed his Complaint in this Court against Floyd County and the Floyd County Health Department on November 18, 2017, alleging violations of his constitutional rights under the Fourth, Sixth, Seventh, and Eighth Amendments.

Specifically, Mr. Hamilton alleges that Floyd County and the Health Department violated his Fourth Amendment rights when they "came onto [his] property without [his] knowledge and [] went through everything, took illegal pictures, even of the neighbors [sic] property." Compl. Mr. Hamilton's complaint further alleges that his Sixth and Seventh Amendment rights were violated when he was denied: a jury trial, the assistance of counsel, notice of the nature of the accusation against him, the opportunity to confront the witnesses against him, and compulsory process for obtaining witnesses in his favor. *Id.* Finally, his Complaint alleges that being required to vacate his residence within five days constituted cruel and unusual punishment prohibited by the Eighth Amendment.

Mr. Hamilton amended his complaint on March 8, 2017, adding Thomas Harris, Thomas Snider, Julia Hayes, Connor Monroe, and Matthew Swarens as Defendants.[2] The Amended Complaint alleges that Ms. Hayes, Mr. Monroe, Mr. Snider, and Officer Swarens entered his residence without a legal search warrant and that Mr. Harris ordered him "to take everything I have outside in my yard, driveway, porch, sidewalk, etc. to the landfill and show him the receipts." Am. Compl. Defendants moved for summary judgment on all of Mr. Hamilton's claims on February 12, 2018. That motion is now fully briefed and ripe for ruling.

## Legal Analysis

### I. Plaintiff's Motion for Preliminary Injunction

#### A. Applicable Legal Standard

---

[2] Mr. Hamilton also sought to name the FCSD as a defendant in his Amended Complaint, but we dismissed all claims against the FCSD in our April 12, 2017 screening order.

To obtain a preliminary injunction, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep's of Health*, 699 F.3d 962, 972 (7th Cir. 2012). If the moving party fails to demonstrate any one of these three threshold requirements, the injunctive relief must be denied. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). However, if these threshold conditions are met, the Court must then assess the balance of the harm—the harm to Plaintiff if the injunction is not issued against the harm to Defendants if it is issued—and determine the effect of an injunction on the public interest. *Id.* "The more likely it is that [the moving party] will win its case on the merits, the less the balance of harms need weigh in its favor." *Id.* at 1100.

**B.    Discussion**

Mr. Hamilton seeks a preliminary injunction preventing Defendants from selling fourteen vehicles and their "contents" that he alleges were improperly removed from the Property. In his motion, he challenges the determination that these vehicles were "abandoned" as defined by Indiana Code § 9-13-2-1 and seeks to prevent their sale on this basis. However, the relief requested by Mr. Hamilton is outside the scope of the § 1983 claims presented in this lawsuit, none of which relate to the allegedly unlawful seizure of vehicles from the Property. "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th

Cir. 1994). Because Mr. Hamilton has failed to establish such a relationship here, we DENY his request for a preliminary injunction.

## II. Defendants' Motion for Summary Judgment

### A. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

### B. Discussion

Mr. Hamilton has raised various constitutional claims against Defendants arising from state court proceedings initiated by the Health Department in order to inspect the Property. Mr. Hamilton argues that, as a result of inspections of the Property ordered by the state court, his Fourth Amendment rights were violated by Defendants entering the Property without his knowledge and without a legal search warrant, going "through everything," and taking illegal photographs. He claims that the state court's orders that he vacate the Property within five days violated his Eighth Amendment rights. Finally,

Mr. Hamilton maintains that his Sixth Amendment rights and his right to a jury trial under the Seventh Amendment were violated during the state court proceedings.

Defendants seek summary judgment arguing that the majority of Mr. Hamilton's claims are barred on jurisdictional grounds under the *Rooker-Feldman* doctrine and that any claims that are not so barred fail on the merits. We address these arguments in turn below.

### 1. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine, named after the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), provides that the federal district courts must decline to entertain "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance v. Dennis,* 546 U.S. 459, 464 (2006); *Kelley v. Med-1 Solutions, LLC,* 548 F.3d 600, 603 (7th Cir. 2008). The doctrine stems from the Supreme Court's exclusive jurisdiction over appeals from state high-court judgments. *See* 28 U.S.C. § 1257. "Claims that directly seek to set aside a state court judgment are de facto appeals and are barred without additional inquiry." *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004).

The doctrine also bars "federal claims presented to the district court that were not raised in state court or that do not on their face require review of a state court's decision" if such claims "are 'inextricably intertwined' with a state court judgment." *Id.* at 532–33. The "crucial point" in determining whether a federal claim is inextricably intertwined

with a state court judgment "is whether the district court is essentially being called upon to review the state court decision." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). If the court finds that a claim is inextricably intertwined with a state court judgment, "then we must determine whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings. … If so, the claim is barred." *Id.* (internal citations omitted).

Here, Mr. Hamilton's Fourth Amendment claim, at least to the extent that he alleges that Defendants' inspections of his property were unlawful because they were carried out without consent or search warrants, is inextricably intertwined with the state court's orders specifically authorizing those inspections.[3] The injury Mr. Hamilton alleges, to wit, the unlawful entry onto his property and into his residence, was caused by the state court's order(s) permitting such entry. Therefore, although Mr. Hamilton does not directly seek to overturn a state court judgment, in order to rule in his favor, we would have to overturn the state court's orders permitting the inspections. Mr. Hamilton also had a reasonable opportunity to raise this issue in the state court proceedings as he had notice of the Health Department's claims with respect to the conditions of the Property and attended court hearings at which the inspections of the Property were addressed.

---

[3] Although not entirely clear from his complaint, we understand Mr. Hamilton also to allege that the actual manner in which the inspection(s) were carried out by Defendants was violative of the Fourth Amendment. However, because that claim involves injuries independent from the state court orders authorizing the inspections, it is not barred by the *Rooker-Feldman* doctrine and will be addressed in the discussion *infra*.

Mr. Hamilton's Sixth and Seventh Amendment claims are also inextricably intertwined with state court rulings. He argues that he was denied his Seventh Amendment right to a jury trial in state court, which is a direct attack on the state court's denial of his jury request. Similarly, his Sixth Amendment claims based on allegations that he was not informed of the nature of the accusations against him, was not able to confront witnesses against him, could not use compulsory process to obtain his own witnesses, was denied a jury trial, and was denied the assistance of counsel in the state court proceedings essentially seek a determination from this Court that the state court proceedings were unconstitutional. Seventh Circuit law is clear that this is the type of request at which the *Rooker-Feldman* doctrine is directed. *Young v. Murphy*, 90 F.3d 1225, 1230–31 (7th Cir. 1996). Mr. Hamilton also had ample opportunity to raise these issues in state court and did in fact file motions raising these issues in the state court proceedings.

Finally, Mr. Hamilton alleges that the requirement that he vacate the Property within five days constituted cruel and unusual punishment in violation of his Eighth Amendment rights. In order to rule in Mr. Hamilton's favor on this claim, we would be required to hold that the state court's orders explicitly ordering him to vacate the Property within five days were unconstitutional. Mr. Hamilton's Eighth Amendment claim thus falls within the scope of the *Rooker-Feldman* doctrine as a direct challenge to state court decisions, or, at the very least, is inextricably intertwined with those decisions. Mr. Hamilton had an opportunity to raise this issue at a number of hearings in state court if he desired.

Although Defendants apparently believe this is the end of the inquiry for purposes of determining whether the *Rooker-Feldman* doctrine is applicable to Mr. Hamilton's federal claims, it is not. *Rooker-Feldman* "divests district courts of jurisdiction *only* in cases where 'the losing party in state court filed suit in federal court *after* the state proceedings ended.'" *Parker v. Lyons*, 757 F.3d 701, 705 (7th Cir. 2014) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)) (emphasis added). State proceedings "end" for *Rooker-Feldman* purposes "'when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum.'" *Id.* (quoting *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 604 n.1 (9th Cir. 2005)) (emphasis removed). Thus, if a "state-court appeal is pending at the time the federal action is filed, the necessary final resolution in the state system is not present." *Id.* at 706. "*Rooker-Feldman* does not bar the claims of federal-court plaintiffs who…file a federal suit when a state-court appeal is pending." *Id.*

Here, Mr. Hamilton filed his original complaint in this action on November 18, 2016. The Health Department's case against Mr. Hamilton was still ongoing in state court on that date. The Seventh Circuit recently held that "[t]he *Rooker-Feldman* doctrine does not apply independently to interlocutory state court orders." *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018). Therefore, because Mr. Hamilton filed his federal complaint before final judgment was entered in the state proceedings, in order to determine which, if any, of Mr. Hamilton's claims are barred by *Rooker-Feldman*, we must determine if and when each of the state court's orders implicated by Mr. Hamilton's federal claims became final under state law.

We turn first to the inspection orders issued by the state court on October 12, 2016, November 16, 2016, and January 18, 2017, respectively. Neither party has informed us, nor have we been able to definitively determine, whether such orders are considered final under Indiana law. Upon the filing of a verified complaint, the state court may authorize a health department inspection of private property under Indiana Code § 16-20-1-23, if the court finds that the local health official seeking the order "by oath or affirmation, provided reliable information establishing the violation of a public health law or rule at the premises." IND. CODE § 16-20-1-23(c). We view such an order as being similar to a probable cause determination on a warrant application, which is not a final order. Moreover, given "the virtual 'unflagging obligation' of a federal court to exercise the jurisdiction that has been conferred upon it," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), in the absence of evidence or argument by the parties to the contrary, we err here on the side of exercising jurisdiction and consider state court inspection orders issued pursuant to Indiana Code § 16-20-1-23 to be interlocutory orders. Thus, the *Rooker-Feldman* doctrine does not bar Mr. Hamilton's Fourth Amendment claims alleging that the inspections were conducted illegally.

Mr. Hamilton's Eighth Amendment claim challenges the state court's orders to vacate the Property issued on November 16, 2016, January 18, 2017, and February 8, 2017, respectively. Indiana law provides that whenever a state board of health, local board of health, or the county health officer determines that a dwelling is "unfit for human habitation" as that term is defined by Indiana Code § 16-41-20-1, that entity "may

issue an order requiring all persons living in the dwelling to vacate the dwelling within not less than five (5) days and not more than fifteen (15) days." IND. CODE § 16-41-20-4. Indiana Code § 16-41-20-9(a) provides that a person who is subject to an order issued under § 16-41-20 "may, not more than ten (10) days after the making of the order, file with the circuit or superior court a petition seeking a review of the order." IND. CODE § 16-41-20-9(a). Indiana law provides that, if such an appeal is filed, "[t]he court shall hear the appeal. The court's decision is final." IND. CODE § 16-41-20-9(b).

In a recent unpublished case addressing the timeliness of an appeal of state court trial orders affirming orders to vacate and abate residential property issued by the Floyd County Health Department pursuant to Indiana Code § 16-41-20, the Indiana Court of Appeals held that the plaintiff "would have needed to file a motion to correct error with the trial court or a notice of appeal with this court within thirty days in order to challenge those orders further." *Fraze v. Floyd Cty. Health Dep't*, No. 22A01-1605-CC-982, 2017 WL 563269, at *4 (Ind. Ct. App. Feb. 13, 2017). Accordingly, although the Supreme Court of Indiana does not appear to have ruled on this issue, we believe that it would treat orders to vacate like those issued against Mr. Hamilton in state court as immediately appealable orders that become final thirty (30) days after issued, unless a party affected by the order files a motion to correct error with the trial court or a notice of appeal with the Indiana Court of Appeals within that time period.

Here, the state court issued its first order to vacate on November 16, 2016, two days before Mr. Hamilton filed his original federal complaint. Because the thirty-day appeal period had not yet run on that order, there was not yet a final resolution in the state

17

court as to that order at the time Mr. Hamilton filed his complaint here.  Therefore,

*Rooker-Feldman* does not bar our review of Mr. Hamilton's Eighth Amendment claim as

it relates to the November 16, 2016 order to vacate.

The state court subsequently issued two additional orders ordering him to vacate

the Property, on January 18, 2017 and February 8, 2017, respectively.  On March, 8,

2017, Mr. Hamilton filed an amended federal complaint in which he added allegations

regarding the inspections conducted by the Health Department pursuant to those court

orders.  The state court's January 18, 2017 order to vacate was filed more than thirty days

before the amended complaint was filed in this Court.  Mr. Hamilton failed to appeal or

otherwise take action on that order in state court before the appeal period ran; therefore,

that order became final before Mr. Hamilton filed his amended federal complaint and any

federal claims directed toward that order are therefore barred by *Rooker-Feldman*.

Because the thirty-day appeal period had not yet run on the state court's February 8, 2017

order to vacate by the time the amended federal complaint was filed, we *do* have

jurisdiction over Mr. Hamilton's Eighth Amendment claim challenging that order.

Mr. Hamilton's Sixth and Seventh Amendment claims are likewise not barred by

*Rooker-Feldman* as the state court issued no order as to those issues that would be

considered final for *Rooker-Feldman* purposes before Mr. Hamilton filed his original

federal complaint on November 18, 2016.  Although Mr. Hamilton first made a request

for a jury trial in state court at the October 12, 2016 hearing, which the state court denied

that same day, a denial of a request for jury trial is not an immediately appealable order.

Mr. Hamilton filed a motion in state court seeking additional time to hire an attorney and

seeking an opportunity to confront his accusers and cross-examine witnesses against him on the same day he filed his federal complaint, meaning that the state court obviously did not issue a final order on those issues before this lawsuit was filed.

For these reasons, the only claim raised by Mr. Hamilton in this litigation that is barred by the *Rooker-Feldman* doctrine is his Eighth Amendment claim implicating the state court's order to vacate, issued on January 18, 2017. We address the merits of Mr. Hamilton's remaining constitutional claims in turn below.

### 2. § 1983 Claims Against Government Entities

We can easily dispose of Mr. Hamilton's § 1983 claims against Floyd County and the Floyd County Health Department. Government entities "may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). "Rather, 'it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'" *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002) (quoting 436 U.S. at 694). Here, Mr. Hamilton has not alleged that any government policy or custom was responsible for the alleged constitutional violations. Accordingly, his claims against Floyd County and the Health Department cannot survive summary judgment.

### 3. § 1983 Claims Against Individuals

#### a. Fourth Amendment Claim

The Fourth Amendment, made applicable to the States via the Fourteenth Amendment, provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. CONST. amend IV. It is undisputed that administrative inspections—like the Health Department inspections here—are searches within the meaning of the Fourth Amendment. *Montville v. Lewis*, 87 F.3d 900, 902 (7th Cir. 1996). Thus, in the absence of consent or exigent circumstances, a government official must obtain a warrant before conducting an administrative search or inspection. *Camara v. Mun. Ct. of City and Cty. of S.F.*, 387 U.S. 523, 540 (1967). "Probable cause to conduct a search for administrative rather than criminal purposes will exist if 'reasonable legislative or administrative standards' are satisfied, but a *warrant* nonetheless is required." *Hamilton v. City of New Albany, Ind.*, 698 Fed. App'x 821, 824 (7th Cir. 2017) (emphasis in original).

Although the Fourth Amendment's probable cause requirement is modified in the context of an administrative search, "the Supreme Court has not as yet held that the other requirements of the amendment's warrant clause … are to be bent for administrative warrants." *Platteville Area Apartment Ass'n*, 179 F.3d 574, 578 (7th Cir. 1999). Accordingly, an administrative warrant must be "(1) under oath and describe with particularity (2) the place to be searched and (3) the persons or things to be seized." *Id.*

Here, Health Department officials did not obtain administrative warrants before conducting the inspections of Mr. Hamilton's property that are challenged in this action, nor is there any argument that Mr. Hamilton consented to the inspections or that an exception to the warrant requirement applied. Defendants argue, however, that the state court's orders authorizing the inspections serve as the functional equivalent to an administrative inspection warrant. To obtain those court orders, Defendants followed the procedures set forth in Indiana Code § 16-20-1-23, which authorizes local health department officials to "enter any premises at any reasonable time and inspect, investigate, evaluate, conduct tests, or take specimens or samples for testing that may be reasonably necessary to determine compliance with public health laws and rules and for the prevention and suppression of disease." IND. CODE § 16-20-1-23(a). The statute requires local officials to obtain consent from the owner or occupant of the residence before conducting a search pursuant to § 16-20-1-23 unless, among other exceptions, the local health officer "obtains an order from a circuit or superior court in the jurisdiction where the premises is located to authorize the inspection, investigation, evaluation, testing, or taking of specimens or samples for testing." IND. CODE § 16-20-1-23(b)(1). A circuit or superior court may issue such an order "if the court finds that the local health officer or the officer's designee, by oath or affirmation, provided reliable information establishing the violation of a public health law or rule at the premises." IND. CODE § 16-20-1-23(c).

Defendants maintain that the state court's orders permitting inspection of the Property, which were issued pursuant to the process described in Indiana Code § 16-20-1-

23, are constitutionally permissible substitutes for administrative warrants. We agree that

the November 16, 2016 and January 18, 2017 inspection orders are the equivalent of

administrative warrants. These orders were both supported by oath or affirmation and

based upon reasonable legislative standards that unfit living conditions were present.

They also specifically identify by address the property to be inspected and define the

scope of the inspections with particularity. The November 16, 2016 order limits the

scope of the search to an inspection of living conditions unfit for human habitation and

identifies in detail the types of potential defects that may be inspected. The January 18,

2017 order limits the scope of the inspection to the conditions previously identified for

abatement.

Thus, the only way in which Mr. Hamilton could show that the inspections

conducted pursuant to these two court orders violated his Fourth Amendment rights

would be to establish that the inspections as actually performed were unreasonable, a

showing which Mr. Hamilton has failed to make on summary judgment in response to

Defendants' evidence and argument in support of the reasonableness of these searches.

*See McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008) ("It is not the

duty of the Court to scour the record in search of evidence to defeat a motion for

summary judgment; rather the nonmoving party bears the responsibility of identifying the

evidence upon which he relies.") (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92

F.3d 560, 562 (7th Cir. 1996)). Defendants are therefore entitled to summary judgment

on Mr. Hamilton's Fourth Amendment claim directed at the November 22, 2016 and

February 6, 2017 searches of the Property conducted pursuant to the November 16, 2016 and January 18, 2017 inspection orders.

The October 12, 2016 inspection order, however, fails to define the scope of the search with particularity. Rather, it authorizes health department officials to "inspect, investigate, evaluate, conduct testing, and or take specimens or samples for testing at 519 Hausfeldt Lane, New Albany, IN 47150," (Defs.' Exh. E-3), but does not further limit the scope of the search in any way. Administrative warrants must "specify the object and therefore scope of the search." *Platteville Area*, 179 F.3d at 580. The October 12, 2016 inspection order failed to do so. The search conducted pursuant to that order was therefore conducted without a warrant or its equivalent in violation of the Fourth Amendment.

Defendants argue that even if we were to find that an issue of fact exists with respect to whether Mr. Hamilton's Fourth Amendment rights were violated—as we have with regard to the October 12, 2016 search—they are entitled to judgment as a matter of law based on qualified immunity. Qualified immunity protects governmental officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, it was clearly established by the time the October 12, 2016 search occurred both that administrative inspections are searches within the meaning of the Fourth Amendment, (*see Montville v. Lewis*, 87 F.3d 900, 902 (7th Cir. 1996)), and that, while a modified probable cause requirement applies in the

administrative search context, administrative warrants must strictly satisfy the oath and particularity requirements. *See Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d, 574 578 (7th Cir. 1999) ("[T]he Supreme Court has not as yet held that the other requirements of the amendment's warrant clause—that the warrant be (1) under oath and describe with particularity (2) the place to be searched and (3) the persons or things to be seized—are to be bent for administrative warrants."). The Supreme Court has made clear that "[g]iven that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004). Accordingly, a reasonable person should have known on October 12, 2016 that a general administrative warrant or its equivalent would not satisfy the Fourth Amendment. Defendants are therefore not entitled to qualified immunity.[4]

For these reasons, Mr. Hamilton's Fourth Amendment claim survives summary judgment as to the legality of the October 12, 2016 search. However, because Ms. Hayes and Mr. Snider were the only individual defendants who personally participated in the October 12, 2016 inspection of the Property, they are the only individual defendants who can be held liable under § 1983. As they had no personal involvement in the October 12, 2016 inspection, Mr. Harris, Mr. Monroe, and Officer Swarens[5] are entitled to summary

---

[4] We acknowledge that, in carrying out the October 12, 2016 inspection, the health department officials' conduct to every appearance was subjectively reasonable and there is no evidence that they exceeded the scope of the matters alleged in the Verified Complaint. However the standard is an objective one and we cannot avoid the conclusion reached here.

[5] Officer Swarens did leave service at the Property for Mr. Hamilton on October 12, 2016, but had no personal involvement with the inspection of the Property conducted that day.

judgment on this claim. *See Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation.") (quotation marks and citation omitted) (emphasis removed); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible.").

### b.    Sixth and Seventh Amendment Claim

In his Complaint, Mr. Hamilton alleges that his Sixth and Seventh Amendment rights were violated in state court. Specifically, he claims that during the state court proceedings, he was denied his rights: (1) to a jury trial; (2) to be informed of the accusations being made against him; (3) to confront witnesses against him; (4) to have compulsory process for obtaining witnesses in his favor; and (5) to have the assistance of counsel. Even if true, however, none of these alleged constitutional violations arose from any act taken by Defendants. Rather, Mr. Hamilton's constitutional injury, if any, was caused by decisions made by the state court. Because there is no evidence indicating that Defendants had any involvement in the alleged deprivation of Mr. Hamilton's Sixth and Seventh Amendment rights, they are entitled to summary judgment on these claims. *See Hamilton*, 698 Fed. App'x at 823 ("A defendant must have personally participated in a violation of the Constitution to be liable under § 1983[.]") (citing *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009)).

### c.    Eighth Amendment Claims

Finally, Mr. Hamilton claims that Defendants' attempted enforcement of the state court's February 8, 2017 order requiring him to vacate his residence constitutes cruel and

unusual punishment under the Eighth Amendment. This claim fails, however, because it is well-established that the "primary purpose" of the Cruel and Unusual Punishment Clause of the Eighth Amendment "has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes …." *Powell v. Texas*, 392 U.S. 514, 531–32 (1968). Here, the state court's order requiring Mr. Hamilton to vacate his residence was based upon allegations that he had violated civil health codes, creating unsafe and unhealthy conditions on the Property that required abatement. Accordingly, the state court's purpose in ordering him to vacate the Property and Defendants' purpose in enforcing that order was not to punish him, but rather to allow for remediation of conditions deemed unfit for human habitation. This is simply not the type of situation that implicates the Eighth Amendment's Cruel and Unusual Punishment Clause. Accordingly, Plaintiff's Eighth Amendment claim cannot survive summary judgment.

## III.    Conclusion

For the reasons detailed above, Defendants' Motion for Summary Judgment is <u>DENIED IN PART</u> as to Plaintiff's Fourth Amendment claim against Defendants Hayes and Snider with regard to the October 12, 2016 inspection and <u>GRANTED IN PART</u> as to all other claims and defendants. The case shall proceed accordingly.

IT IS SO ORDERED.

Date:    9/28/2018

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JARRETT HAMILTON
519 Hausfeldt Lane
New Albany, IN 47150-2220

Alyssa C.B. Cochran
KIGHTLINGER & GRAY, LLP
acochran@k-glaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com